## TOWN OF BOLIVAR, TENN., v. KELLY.
### No. 6311.

Circuit Court of Appeals, Sixth Circuit.

Feb. 16, 1934.

C. C. Crabtree, of Memphis, Tenn., and Alan Prewitt, of Bolivar, Tenn. (H. E. Carter, of Bolivar, Tenn., and Crabtree & Crabtree, of Memphis, Tenn., on the brief), for appellant.

W. H. Borsje, of Memphis, Tenn. (Roane Waring and John E. McCall, both of Memphis, Tenn., on the brief), for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

The town of Bolivar appealed from a judgment against it in favor of T. M. Kelly for damages for personal injuries.

Appellant operated its own electric light plant. Appellee was an electrician and lineman. As such he began work for appellant on March 6, 1930, and continued in the employment until October 16. On the morning of that day he was working on a pole, tightening some lines, when the pole broke, and, falling with him, caused the injuries for which he sued.

Appellant questions the denial of a directed verdict in its behalf. The court correctly overruled the motion to direct a verdict. The pole broke off just below the surface of the ground. It was old, cracked, rotten, and out of plumb. Appellant concedes that it had been in this condition for a considerable period of time before the accident. It insists, however, that appellee's own negligence was the sole cause of his injury, or at least made him equally culpable with appellant in proximately bringing it about. This contention is based upon two theories: First, that appellee violated the specific terms of his employment by which he undertook as an inspector to see to the safety of the pole; and, second, that even though his duties were no more than those of a lineman, he failed to use ordinary care and caution in ascertaining the condition of the pole before he climbed it. But the record discloses that both propositions involve sharply disputed questions of fact properly to be determined by a jury.

However, appellant has raised a more serious question. It introduced three witnesses whose testimony tended to show that appellee after the accident, while still on the ground and unable to move by reason of a broken leg, made certain statements concerning the accident. One of these witnesses, Crawford, testified that he asked appellee how it happened, and that he responded: "Oh, well, it's my fault. I should have examined the pole before climbing it." The second witness, Stewart, testified that in appellee's conversation with Crawford he stated, "It's my business to inspect it"; and the third witness, Sain, testified: "It seems to me that Mr. Crawford said something to Mr. Kelly about the pole * * * and Mr. Kelly said he was to blame."

The testimony of Crawford and Stewart, to say nothing of that of Sain, was relevant to the issue. Upon rebuttal appellee testified that he did not remember making such statements and in addition introduced testimony by other witnesses tending to show that they were not made. Further than this appellee made no effort to discredit either of these witnesses.

In the charge the court referred to the testimony of Crawford, Stewart, and Sain. He said: "Now, gentlemen, about those three witnesses that testified to that conversation. *If a man lies about a comparatively unimportant thing, he will lie about something else. Personally I don't think much of those witnesses.* * * * *It struck me Mr. Crawford went and told something and got a couple of gentlemen of not very strong intellect to back him up and they got the conversation twisted. That is my opinion. It may have struck you differently. It may have struck you that they were descendants of George Washington but personally I think Ananias was their grandfather.* But what he actually said about the accident as he lay there on the ground has very little to do with the accident anyhow. * * * "

Again commenting on the evidence of these witnesses, the court said: "Well, that evidence is too uncertain to be considered, and should be considered by you only in regard to other testimony as to the condition of the pole because if they told three such remarkable stories about one conversation I would not pay too much attention to their testimony about the condition of the pole. * * * "

At the conclusion of the charge and in the presence of the jury, appellant excepted to the above-quoted reference to the testimony of Crawford, to which the court responded: "Well, that, gentlemen, is a question of fact for you to consider. All questions of fact are to be judged by you, and you are not to be influenced by that. You have a perfect right to reach a diametrically opposite opinion from the opinion of the trial court, but as the trial court I have the right to express myself as to what I think about certain testimony. *If I ever heard three liars from the witness stand in my life it was those three witnesses. They convicted themselves out of their own mouths.* However, you may believe all three of them. I don't see how you can because there are three stories as to the conversation, one absolutely contradictory of the other. However, as I said before, that made no difference really with any vital feature of the law suit. *As near as I can make it out they were just lying for exercise.*" (All italics ours.)

We think the exception was well taken.

There was nothing from which to infer that Crawford had procured the other two witnesses to corroborate him. The language used by the court went beyond dispassionate judicial expression. It exhibits the characteristics of impermissible comment on the evidence. The response to the exception tended to intensify rather than alleviate the prejudicial effect of the initial comment. We think that both the original instruction and the response went beyond the permissible limit, and we cannot say that their effect was other than highly prejudicial. In support of our conclusion we need cite only the cases of Quercia v. U. S., 289 U. S. 466, 53 S. Ct. 698, 77 L. Ed. 1321; Wallace v. U. S., 291 F. 972, 974 (C. C. A. 6); and Parker v. U. S., 2 F.(2d) 710 (C. C. A. 6).

We do not think the fault was remedied by the precautionary admonition, found in the response, that the jury was not to be influenced by the court's opinion. However sincerely it may have tried to give unbiased consideration to the testimony of appellant's witnesses, we do not believe that it could easily free itself from the court's conviction so forcibly stated in the language above italicized.

As the case must be retried for the error indicated, we think it proper to advert to one additional matter—the court did not submit to the jury any specific instructions upon the law of proximate cause, negligence, contributory negligence, and assumption of risk. This gave rise to a series of requests for specific instructions which were declined. The view of the court seemed to be that such instructions would be more easily understood by the jury if they were stripped of their technical legal definitions.

An effort to translate formal or technical rules of law into simple language understandable by lay jurors is perhaps to be commended, but this does not relieve the trial judge of the duty to instruct the jury upon the law applicable to the issues in the case. This, as we have already indicated, was not done, and failure to so do is clearly error upon the face of the record, of which we must take cognizance. See Memphis Press-Scimitar Co. v. Chapman, 62 F.(2d) 565, 567 (C. C. A. 6).

The judgment is reversed and the case is remanded for a new trial.[1]

---

[1] The late Circuit Judge HICKENLOOPER participated in the conference upon this case and concurred in the conclusions reached, but died before the opinion was prepared.